Good morning, Your Honors, and may it please the Court. My name is Evangeline Abreel, and together with Co-Counsel Jamie Young, I represent Mr. Asican in this case. Mr. Asican had been a lawful permanent resident of the United States for 19 years and was the single father of three United States citizen children when he was found removable in 2008. The immigration judge erred at both stages of this proceeding. He erred in finding Mr. Asican removable as charged, and I will address that point. He also erred in applying an incorrect standard of law in denying Mr. Asican's application for cancellation of removal, and Ms. Young will address that point. And, Your Honors, we're going to try to do the impossible, and I'm going to try to speak for five minutes, then Ms. Young for four minutes, and then save one minute for Ms. Young. Also, I'm having difficulty hearing you. Could you speak louder? Yes, yes, Your Honor. We're going to try to do the impossible. I'll speak for five minutes, Ms. Young for four minutes, and then save rebuttal for one minute. Who's discussing pangilinan? Pangilinan? Your Honor, I think I am. You don't know? All of a sudden it's going blank, Your Honor. Yeah, that was in your letter. In the 28-J letter. Yeah, 28-J, and that's a recent case. Yes, Your Honor. Are you arguing that that's controlling? That it's controlling? Yeah. Yes, Your Honor. And in this case, the immigration judge in Mr. Asican's case actually did about the same thing that the judge in pangilinan did. He turned the matter over to the government counsel to elicit questions, and then failed to actually ask some of the relevant questions that the immigration judge should have asked, given Mr. Asican's pro se status. And the problem with this, the court in pangilinan found, was that it created an improper conflict of interest for the government in having to both develop the record and present the government's case. And how do you think that affected the outcome of this case? Your Honor, part of our argument is that Mr. Asican should have been, the immigration judge should have assisted Mr. Asican in developing the record, particularly as to his, as to the existence of a domestic violence waiver of his deportation ground of conviction of a crime of domestic violence. The immigration judge did not do that. And so the pangilinan case supports our argument that the immigration judge didn't develop the record in the way that he should have in order for Mr. Asican to bring forward the evidence about his waiver. Mr. Asican was convicted in April of 98 of criminal threats, is that right? Yes, sir. In 2004, he was convicted of assault with a weapon other than a firearm? Yes, Your Honor. And then also corporal injury to a cohabitant? Is that right? Yes, Your Honor. And it's your contention that he should have been told that he, there should have been an inquiry about whether he was the victim of domestic violence on these facts? Yes, Your Honor. What reason would we have to think that he was the victim instead of the convicted defendant here? Your Honor, there, Mr. Asican, as I mentioned, Mr. Asican didn't have the assistance of the immigration judge in developing the record. But even without that assistance, he was able to bring out enough information to show apparent eligibility for this, the waiver of the domestic violence deportation ground, which is found at Section 1227. On the grounds that he was really the victim here? That's correct, Your Honor. Even though he was convicted of it? Yes, Your Honor. Okay, now what evidence is there that that's really the case? Mr. Asican testified that the mother of his children, Leah Egos, hit the children repeatedly, called him constantly, filed false charges with the police against him, used drugs, and finally abandoned the family. Okay, how does, even if that's true, which is frankly dubious since he's the one who's convicted, how would that make him a victim of domestic violence if his wife calls him all the time? I mean, I guess by that standard, I'd be a victim of domestic violence. Your Honor, the requirement, the elements of the domestic violence waiver are that Mr. Asican have been the victim of domestic abuse. It need not have been domestic violence. And that waiver is there for a situation like this where you've got an abusive situation in a household where it might result in one person pleading guilty to a domestic violence offense, but that only being part of a much larger situation going on. Okay, let's say we don't buy that. His grounds for removability include that he was convicted of a domestic violence offense, right? Yes, Your Honor. And that was not challenged before the BIA, right? No, it was challenged, Your Honor, because if he were granted this waiver, this domestic violence waiver, which goes only to that ground. I don't see where he raised that in his appeal to the BIA. Oh, I'm sorry, Your Honor. No, I'm sorry, I misunderstood the question. No, Your Honor, he did not raise that in his appeal to the Board of Immigration Appeals, but the Board of Immigration Appeals in this case adopted and affirmed under matter of Burbano, which means that all issues raised before the immigration judge were deemed raised before the Board of Immigration Appeals. And here the existence of a waiver to a deportation grant, particularly here where you've got a waiver that applies only to the immigration judge. Did he raise it before the EIJ that he claimed he was entitled to a waiver? No, he didn't, Your Honor, because he didn't know. That was the immigration judge's responsibility to tell him. But so while he didn't raise that waiver before the immigration judge and didn't specifically raise it before the Board of Immigration Appeals, the Board of Immigration Appeals in its adopting and affirming under Burbano considered that because when you look at an admissibility or a deportation grant, a waiver of that grant is part and parcel of the removal grant, particularly here in a situation like this where you have a deportation grant that has a waiver specifically going just to that deportation grant. So the domestic violence waiver under Section 1227A7 goes only to the deportation ground of conviction of a domestic violence crime under 1227A2E. So they're part and parcel of the same thing. If the Board of Immigration Appeals is deemed to have considered the deportation ground, then it must have also considered the waiver that goes with that deportation ground. What about the cancellation issue with respect to Pangilinan? What should have been developed with respect to cancellation? Your Honor, Ms. Yanni is actually going to address cancellation, but I can briefly address that point. Okay. Well, what's up to you? If you'd rather have your co-counsel address. I'll address it briefly and let her add to it. But in Pangilinan said that the immigration judge has the obligation to develop the record and that's not a new rule. This Court has held that for some time and it's actually part of the ‑‑ it's a requirement under the Code of Federal Regulations. But in this case, there were a number of points where Mr. Asakan said things that the immigration judge didn't follow up on. He said that the children were in foster care. The immigration judge didn't try to find out what that was like for the children. He said that the mother had abused the children. Mr. Asakan said that the mother had hit the children. Mr. Asakan didn't try to figure ‑‑ the immigration judge didn't try to ask what sort of situation that was. So there were a lot of issues like that. How would that have helped him? If he had not been deported, how would that have changed the hardships to the children? If he were not deported, then he would be here to help care for the children. And so they wouldn't be ‑‑ But if they were in foster homes, how would his deportation have affected them? Well, Your Honor, being ‑‑ they're in foster homes because the immigration judge ‑‑ because Mr. Asakan is in immigration detention. Was that the reason that they were in foster homes? It's not ‑‑ the record doesn't say clearly, but they went into foster care at the time Mr. Asakan was arrested. So ‑‑ Has any of this developed in the record? Not very much, Your Honor, no. Is that then what you're arguing, that that was the obligation of the immigration judge to develop the circumstances regarding the American citizen children? Yes, Your Honor, and also the immigration judge had an obligation to develop the information concerning the domestic violence waiver. I'm sorry, Your Honor, I've ‑‑ Well, we'll give you a co‑counsel. Okay, I'm going to turn it over to my co‑counsel. I'm sorry for taking the initiative. That's all right. We'll give her time. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Jamie Young, and as stated by my co‑counsel, I will address the issue of how the IJ erred in denying Mr. Asakan's application for cancellation of removal because he applied an incorrect legal standard by failing to consider the crucial factor of hardship to Mr. Asakan's three U.S. citizen children in the event of removal. Mr. Asakan did exhaust this issue in his brief to the BIA on page 9 of the administrative record where he states that the IJ erred in denying his application for relief and that an IJ's decision should be set aside if it fails to consider all relevant evidence. The BIA has stated through case law that in the exercise of discretion in a particular case, the IJ is required to consider all facts and circumstances involved, and one of the several factors enunciated by the BIA in its cases is evidence of hardship to the respondent and his family if deportation occurs. Can you tell us how your issue of IJ's consideration of hardship to the children is affected by Panjilinan, or to what extent you argue that his failure to develop the record is prejudicial to your client? Yes, Your Honor. There was clear evidence in this case through Mr. Asakan's credible testimony that, as my co-counsel stated, that Leah Egos had hit the children, she used drugs, and she abandoned them and did not care for them while he was away at work. Thus, he was the only caring parent for them. Well, that part of the record is developed. What part do you contend is not developed? Well, Your Honor, the immigration judge in stating the law to be applied in Mr. Asakan's case failed to actually apply all the factors that the immigration judge stated, especially the factor of hardship to the children. And that is where Mr. Asakan is prejudiced, because had the immigration judge weighed this factor, it may have affected its ultimate decision. The evidence showed the immigration judge found in his factual findings that the children are currently in foster care and that they do not live with their mother. But in his analysis in weighing the factors, the only mention of the children is an acknowledgement of their ages, that they are in good health, and that child support was automatically being taken out of Mr. Asakan's salary. However, this court stated in Figaro v. Mukasey that in determining hardship, an immigration judge must not look only to the children's current condition, but to their future condition in the event of their parents' removal. And that is where the immigration judge erred in that he failed to consider the future hardship to the children. In addition, this court stated in Giorgio v. INS that this court cannot assume the INS considered factors that it failed to mention, and thus here, where we have clear evidence of future hardship to the children and the immigration judge failed to state this in his analysis, this supports our argument that he failed to consider this compelling factor of hardship at all, which then resulted in the legal error that requires reversal and remand by this court. Thank you. Thank you. Case just argued will be submitted. Oh, sorry. I forgot about you. All right. May it please the court. I heard two, but they were both on the same side. That's right. All right. This case involves the discretionary denial of cancellation of removal of a lawful permanent resident. Accordingly, the court is limited to questions of law and constitutional issues which have been administratively exhausted. Thus, the court is limited to the question of whether the agency applied the correct standard and petitioner's due process claim based on the interpreter. Now, the immigration judge applied the correct standard. He weighed the ñ he balanced the adverse factors with the positive factors in reaching his decision. And as he applied the correct standard, that resolves that issue. And with respect to the petitioner's due process claim, there ñ he, as a count, understood the interpreter. The IJ cured any errors that were raised. And before the board, asked him to provide no specific basis as to how translation led to errors, though he certainly could have clarified any of his own testimony. You, Your Honor, asked questions about Pangellinan. This case ñ Before you get to that, did he weigh the effect on the children? He considered the children a positive factor in his analysis. But did he weigh the effect on the children in considering deportation, the hardship to the children? Well, it's obvious that there's going to be some hardship to the children based on the removal. And as he considered the children in the balancing process, he applied the correct standard. Well, all he said is that he has three children. Well, he said he has three U.S. citizen children. Yeah. The IJ considered what Asikhan presented to him. He said, this is the kind of testimony that I want, and I'm going to ask. And he also, at the end, said, do you have anything else to add? Well, that was true in Pangellinan also. He asked, do you have anything else to add? And we said, that doesn't matter. But if you look at Pangellinan, the cases it cites, this case is nowhere near the situation in Torres and Martinez-Rosas. It's not like Agyeman. Well, we thought we were doing a little more in Pangellinan or we wouldn't have published it. Yes. At the same time, if you read Pangellinan, it's very brief and does not go into the circumstances of the case. We thought we were just setting forth a nice, clear rule. It states clearly what is expected. That the IJ will develop the record when there's no attorney. He did. Not leave it up to the government to do it. The IJ is limited in a sense in time of how much he goes into. But that's not what he did, is it? He said the same thing that the IJ said in Pangellinan. He said, well, now you're going to be asked questions by the government that are both good for you, bad for you. They'll develop the record, he said, basically. The record was developed. By the government, not by the IJ. The IJ supplemented questions. The government wasn't the the government's attorney was not the only person asking the questions. The IJ supplemented the questions. He clarified a couple of questions that the government asked. He clarified, but he also did some independent questioning as well. Let's see. To the. He could have also raised your contention that the issue of removability is not before us. Correct. It was not exhausted to the board. Also, with respect to tie it back to Pangellan, he did not. The Pangellan issue is a due process issue and it requires exhaustion. And well, this case was decided after. Yes. But the basis of the Pangellan decision that the IJ has this duty to to do to develop the record was was there. They could have made that argument before the board. They could not have cited obviously on Pangellan, but they could have made the argument and they failed to do so. And this is a this is exactly the type of due process argument that should be exhausted before the board. Now, with respect to removability, again, it was it was not exhausted and you must exhaust removability issues. That's this court held in Rendon. What was exhausted before the board? Please repeat. What was exhausted before the board? Before the board, he said basically the cancellation of removal claim. He said that the door that the immigration judge basically challenged the weight of the immigration judge's balancing balancing determination. While the court does not have jurisdiction over the actual weighing liberally construed. We can eat. The court has jurisdiction to determine whether the correct standard was applied and is the respondent's position that the correct standard was applied in this case. What was the correct standard that was applied? The board has delineated the standard in matter of CVT. And an immigration judge, upon review of the record as a whole, must balance adverse factors evidencing the aliens undesirability as a permanent resident with the social and humane considerations presented in his or her behalf to determine whether the granting of relief appears in the best interest of this country. There's no stereotypical set of standards. It's and the IJ explained what needed to be said. He considered the evidence. He balanced it and thus applied the correct standard. Do you think that a hardship to the American citizen children separation from their father, loss of his support is relevant or not relevant? Well, it's of course it's. Well, the IJ said he would consider the hardship of the family. But at the same time, it's inherent that there is this. There's this hardship. And he asked about the he knew about the child support and and that he visits them once a month. But and so he considered the children as a positive factor for the granting of cancellation of removal. But I don't quite understand that. Consider the positive factor of the existence of the. If there's hardship to the children, that would be a positive factor for granting cancellation of removal. And so as he considered the children a positive factor, he he considered the hardship. What nature of hardship is required? There's there's no set. There's no set standard. It's basically a balancing. And I think that's extensive. Any hardship at all. Any hardship at all. Well, it's a factor. How much it should play out. I'm not I don't think the board has really come out. Have to be extreme hardship. You're that's more of that's more akin to the exceptional, extremely unusual hardship for cancellation rule of a non-permanent resident alien. This deals with if you're statutory eligible for cancellation removal, are you going to grant it or not? And the board has not come out with a defined set of what hardship will will be will lead to a grant of cancellation of removal. As a discretionary determination. Don't you think it's relevant? It says in 2003 they went to foster parent care. Would it be relevant whether they went there while he was just going about doing whatever he was doing or because he was picked up for immigration and put into custody? I'm not contending that his hardship is not relevant. If that's what you're saying, I.J. I.J. specifically said he would he considered hardship a relevant factor. And on the before the testimony was given, the previous hearing, he said, OK, this is what I'm going to look for. Come back and again explain that there's he's going to be balancing things. And then the testimony ensued. So there is no question of the hearts to the children, at least in this case that I.J. considered it a relevant factor. If the court has no other questions, the court should deny the petition for review. As the immigration judge applied the correct legal standard and and afforded due process to to ask. Thank you. We've used your time, but we'll give you another two minutes. Thank you. I'd like to just quickly address the issue of cancellation. The although there is no exhaustive list or an inflexible standard that must be applied. The BIA did state as a rule that an I.J. must consider all relevant factors. And Mr. Jolly just said that at the previous hearing, the I.J. said, I'm going to weigh hardship and I'm going to take various things into account. Is that is that correct? Is that what he said? Yes, that is correct. Your Honor, the I.J. did state the rule or the law that he would apply in his decision. He stated generally, this is the law that I'm going to apply and stated listed several factors, including evidence of hardship to the respondent and his family. However, the I.J. in his analysis then failed to actually apply. Well, then the next hearing, he goes through the factors and he says, I'm cognizant of the fact that you have three children who are U.S. citizens and I'm cognizant of the fact that you pay child support. I mean, he went through that after the previous hearing saying, I'm going to weigh these considerations. Why isn't that adequate? Your Honor, that is inadequate because simply acknowledging that the children exist and that Mr. Ossacon was supporting them is not actually considering the future hardship if Mr. Ossacon were removed. And as the I.J. acknowledged, he was supporting them. He was the only one supporting them because their mother had abused them and abandoned them. And as a result, the I.J. should have known that if Mr. Ossacon were removed, the children would suffer because they were placed in foster care around the same time that he was placed in detention. So it is very clear that the children would suffer hardship if their only caring parent were removed from this country. And the immigration judge's acknowledgement that this is a factor should be considered, but then failed to consider it, is where the I.J. erred, and this Court should reverse and remand the I.J.'s decision. Thank you, Your Honor. Thank you, counsel. Thank you all very much. The case just argued is really submitted this time. And the Court will stand in recess for the day.
judges: Hug, Reinhardt, Silverman